UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERINA EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:11CV1198 CDP |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This is an action under 42 U.S.C. Section 405(g) for judicial review of the Commissioner's final decision denying the application of Jerina Evans for Disability Insurance Benefits under Title II of the Social Security Act. Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision.

## Procedural History

On January 7, 2009, Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff received an unfavorable initial determination on April 22, 2009. She requested a hearing with an Administrative Law Judge (ALJ) on May 5, 2009. After a hearing, the ALJ issued an unfavorable

decision on May 12, 2010. Plaintiff requested review with the Social Security Administration's Appeals Council on June 22, 2010, but the Council declined to review the case on June 1, 2011. Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## **Evidence Before the Administrative Law Judge**

Plaintiff was born on July 5, 1947, and was 62 years old at the time of the ALJ's ruling. She has a 12th-grade education, and is a licensed cosmetologist. She alleges a disability onset date of July 1, 2007, and the last date she held insured status was December 31, 2008. Her most recent previous work was as a gate agent for Trans World Airlines, but she was laid off in 2003, several years before her alleged disability onset date.

### Medical Records

Dr. Veronikis

Plaintiff was admitted to St. John's Mercy Hospital on December 9, 2005 and treated for adrenal crisis and Addison's disease, an affliction of the adrenal gland that raises blood pressure, among other symptoms. Plaintiff saw Dr. Irini Veronikis for a follow-up on June 12, 2006, in which Dr. Veronikis noted that Plaintiff was doing well. Fifteen months later, on September 14, 2007, Plaintiff

2

saw Dr. Veronikis for another follow-up visit, in which Dr. Veronikis observed Plaintiff feeling anxious and experiencing tremors.

Dr. Wiethop

Plaintiff was treated by Dr. Wiethop on March 18, 2008, and Dr. Wiethop noted that Plaintiff had a head tremor. Plaintiff saw Dr. Wiethop again on September 10, 2008 for a follow-up on her Addison's disease diagnosis. During another follow-up appointment with Plaintiff on February 18, 2009, Dr. Wiethop noted that Plaintiff's current prescription medications included Xanax and Levoxyl.

Dr. Mattson

Plaintiff was treated by neurologist Dr. Mattson on April 2, 2008, who noted that Plaintiff's head tremor had progressed over the last couple of years, and that her hands were involved as well. He diagnosed essential tremor and prescribed Primadone.

2009 Records

Plaintiff was treated by Dr. Anthony D'Angelo on March 27, 2009, who diagnosed Plaintiff with dysphonia, a laryngeal spasm, and laryngopharyngeal reflux.

Plaintiff was seen by consulting physician Dr. Patrick Hogan on April 13,

2009. He confirmed the 2008 diagnosis of Addison's disease and hypothyroidism, and noted tremors of the voice, tongue, head, and foot.

On August 1, 2009, Plaintiff was seen at the emergency room of St. John's Mercy Hospital, complaining of neck pain and dizziness. She was given a diagnosis of cervical strain and was released with medications and instructions for stretching exercises.

Plaintiff sought physical therapy on September 3, 2009 for a shoulder injury that had occurred several years previously at work, while she was shutting an aircraft door. Plaintiff complained of a numbness in her right arm while sleeping on her right side, and the therapist noted a 10 pound lifting restriction. However, the therapist noted that Plaintiff's range of motion improved over the course of several visits.

## Testimony

Plaintiff testified that before the onset of her tremors, she had been employed as a cosmetologist and as an airline ticket agent. She testified that the tremors are the physical problem keeping her from working. The tremors were worse in 2008 than they are now, and Plaintiff attributed the improvement to a

prescription for Propanolol from a Dr. Racette.[1]

Plaintiff testified that her affliction was essential tremor, and said her doctors had told her it was "related to Parkinson's disease." Plaintiff stated that Dr. Mattson had put her on two unnamed drugs that made her a zombie and made her sick, and because of the adverse effects she stopped taking them.

Plaintiff testified that in 2008 she couldn't do tasks such as buttoning her shirt, handing someone a glass of water, or putting on make-up. She states that she could not handle coins because her hands would shake too much. However, she testified that using two fingers, she could type, use the internet, and pay bills online. Plaintiff testified that she could drive short distances and could do ordinary household chores like fixing dinner, putting dishes in the dishwasher, and vacuuming.

Plaintiff testified that she could stand and sit, and that her ability to walk was not affected by the tremors. She stated that the tremors were worse in the morning and improved throughout the day.

## **ALJ's Findings**

The Commissioner found that, though Plaintiff had the severe impairment of

---

[1] Although Dr. Racette was contacted for records, none were ever provided to the Social Security Administration.

essential tremor and could not return to her previous work, she had a Residual Functioning Capacity (RFC) that would allow her to do "medium work." The ALJ's findings were that: (1) Plaintiff's "date last insured" was December 31, 2008. (2) Plaintiff did not engage in substantial gainful activity from July 1, 2007, her onset date, to her date last insured, December 31, 2008. (3) Plaintiff had a severe impairment, essential tremor without diagnosis of Parkinson's disease. This impairment results in functional limitations that more than minimally restricted Plaintiff's ability to work. (4) Plaintiff did not have an impairment that met or medically equaled a listed impairment in the SSA guidelines. (5) Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), with the additional limitation that she avoid fine motor movements with her hands. (6) Plaintiff is unable to return to her previous work.
(7) Plaintiff's birth date is July 5, 1947, and thus she was an individual of advanced age per 20 CFR 404.1563. (8) Plaintiff has a high school education and speaks fluent English. (9) Transferable job skills were immaterial because the medical-vocational guidelines were used to determine RFC. (10) Through the date last insured, there were jobs that existed in significant umbers in the economy that Plaintiff could have performed. (11) Plaintiff was not under a disability, as defined by the Social Security Act, at any time during the period July 1, 2007 to December

31, 2008.

The ALJ concluded that while Plaintiff's impairment rendered her unable to return to her past work, she was capable of medium work, and therefore was not eligible for disability assistance. The ALJ noted that Plaintiff's application was inconsistent with her testimony regarding her daily activities, and her testimony was not credible to the extent that it conflicted with the RFC determination. The ALJ also noted that no treating or consulting physician had expressed an opinion that Plaintiff was unable to work during the time period in question.

## **Legal Standard**

On review, the Court determines if the Commissioner's decision is "supported by substantial evidence." *Onstead v. Sullivan*, 962 F. 2d 803, 804 (8th Cir. 1993). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of claimant's physical impairment;

6) The testimony of vocational experts based upon proper hypothetical questions which fairly set out the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Secretary of Dept. of Health, Education and Welfare*, 623 F.2d 523, 527 (8th Cir. 1980)(footnote omitted); *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

In evaluating the ALJ's decision, the Court must consider both evidence that supports the conclusion reached and evidence that casts doubt upon it. *Eichelberger v. Barnhart*, 390 F.3d 584. An administrative decision is not reversed if there are two possible conclusions to be reached and the Court simply would have chosen a different outcome. *Id.* The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact-finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

Disability is defined in the Social Security regulations as an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). In evaluating whether an applicant is disabled by the standards of the Social Security Administration, the Commissioner must evaluate the claim using a five-step process: (1) The Commissioner determines if Plaintiff is presently engaged in substantial gainful activity. If so, Plaintiff is not disabled. 20 C.F.R. § 404.1520(b). (2) The Commissioner determines if the alleged impairment is sufficiently severe so as to significantly limit Plaintiff's ability to work. If not, Plaintiff is not disabled. *Id.* § 404.1520(c). (3) If impairment is sufficiently severe, the Commissioner determines whether the impairment meets or equals an impairment listed in the regulations. *Id.* § 404.1520(d). (4) If the impairment does not meet or equal a listed impairment, the Commissioner determines whether Plaintiff's impairment prevents her from returning to her past work. *Id.* § 404.1520(e). (5) If it does, the Commissioner determines whether any substantial gainful activity exists which Plaintiff can perform. *Id.* § 404.1520(f).

In considering the subjective complaints in the testimony of Plaintiff, the Commissioner must consider the factors set out in *Polaski v. Heckler*, 739 F.3d 1320 (8th Cir. 1984), which include (1) Plaintiff's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4)

dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.* at 1322.

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). However, the record must be considered as a whole, thus the treating physician's opinion does not automatically control. *Prosch*, 201 F.3d at 1013.

## **Discussion**

A review of a denial of Social Security Benefits requires a Court to determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g). Here, Plaintiff asserts two reasons why the ALJ's decision should be overturned. First, Plaintiff argues that the finding of residual functional capacity allowing her to do medium work is not supported by the medical evidence in the record, and thus violates the requirement stated in *Singh* and *Lauer* that "some" medical evidence support the finding. Second, Plaintiff argues that vocational expert testimony was required, because her limitation on fine motor movements is a significant non-exertional impairment.

In response to these assertions, the Commissioner maintains that while Plaintiff had a severe essential tremor, this was not an impairment included in the listed impairments that qualify a Plaintiff for disability automatically. Further, the

ALJ found that Plaintiff had the RFC to perform medium work, but must avoid fine motor movements. Because a limitation on fine motor movements did not represent a 'significantly diminished' ability to perform medium work, the testimony of a vocational expert was not required to be included in the record.

    1.    <u>Medical Evidence in the Record to Support the Residual Functional Capacity Finding</u>

Plaintiff emphasizes that "some medical evidence" must support the ALJ's RFC finding, citing *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000), *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2000), and *Dykes v. Apfel*, 223 F.3d 865 (8th Cir. 2000). The Commissioner responds that the ALJ did, in fact, consider all of Plaintiff's credible symptoms in reaching the RFC determination.

The ALJ determined that Plaintiff's abilities met the standard for medium work, which requires lifting a maximum of 50 pounds at a time and frequent lifting of up to 25 pounds. 20 C.F.R. § 404.1567(c). Medium work requirements include sitting, standing, walking, lifting, carrying, pushing, and pulling. Social Security Ruling 83-14 at 5-6. By her own admission, Plaintiff's ability to stand, sit and walk was not affected by the tremors.

Three doctors, Dr. Veronikis, Dr. Wiethop, and Dr. Mattson, concluded that Plaintiff's condition was normal except for the tremors. Dr. Veronikis indicated in her notes that Plaintiff's Addison's disease, the original claim in filing for Social

Security Disability, has been controlled with medication.

The ALJ found that while Plaintiff did have a medically determinable impairment, she was nonetheless qualified to do medium work, notwithstanding her impairment, on the strength of the opinions of her doctors. This determination was reasonable given the medical evidence presented in the record.

2. <u>Failure to Call Vocational Expert</u>

The ALJ found that Plaintiff is capable of engaging in medium work, per the medical-vocational guidelines, with the caveat that she must avoid work involving fine motor movements. Plaintiff asserts that the restriction on fine motor movements is a significantly diminishing limitation on her ability to work, and therefore the ALJ erred by referring only to the medical-vocational guidelines instead of the testimony of a vocational expert. The Commissioner responds that fine fingering is not a significant component of medium work, and therefore, this limitation does not significantly diminish the pool of jobs available to Plaintiff.

Plaintiff argues, citing *Thompson v. Bowen*, 850 F.2d 346 (8th Cir. 1988), and *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997), that because her essential tremor is significant in nature, the testimony of a vocational expert is automatically required. This is a mischaracterization of the case law. *Thompson* states that "an ALJ may use the Guidelines even though there is a non-exertional impairment if

the ALJ finds, and the record supports the finding, that the non-exertional impairment does not diminish Plaintiff's residual functional capacity to perform the full range of activities listed in the Guidelines." *Thompson*, 850 F.2d at 349-50. *Lucy* uses the same language, verbatim. *See also Shannon v. Chater*, 54 F.3d 484, 488 ("If the ALJ finds that the claimant's non-exertional impairment does not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities, the ALJ may apply the Guidelines in spite of a non-exertional impairment."). Here, because the ALJ found, and the record supports the finding, that Plaintiff's essential tremor did not diminish her ability to perform medium work, use of the medical-vocational guidelines was sufficient and the testimony of a vocational expert was not required.

Furthermore, the ALJ's determination that a limitation on fine motor movements did not significantly diminish Plaintiff' ability to engage in medium work is supported by several prior Social Security Rulings to this effect. Social Security Rulings are treated with deference by the court; where a reasonable interpretation of the statute is offered, it is lawful. *Barnhart v. Walton*, 535 U.S. 212, 224 (2002). Limitations on finger movements are classified as a non-exertional impairment. 20 C.F.R. § 404.1569(c)(1)(vi); *see also* Social Security Ruling 85-15 at 19; Social Security Ruling 83-10 at 3. Here, the Social Security

13

Rulings are consistent with each other, and are a reasonable interpretation of the statute. *Barnhart*, 535 U.S. at 224. Plaintiff was determined to have a non-exertional impairment. Once Plaintiff is determined to be capable of the primary strength requirements of sedentary, light or medium work, such as sitting, standing and walking, a further determination is required as to the number of jobs available to Plaintiff, given her non-exertional impairment. Social Security Ruling 83-14 at 5-6. In medium work, "[u]se of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers..." Social Security Ruling 83-10 at 15; *see also* SSR 83-14 at 14 (stating that "most unskilled medium jobs require gross use of the hands to grasp, hold, and turn objects rather than use of the fingers for fine movements of small objects."). Here, Plaintiff was determined to have no restrictions on her ability to sit, stand or walk, and therefore she was capable of medium work. Further, multiple Social Security Rulings indicate that fine fingering is not a major component of medium work, and thus does not significantly diminish the pool of jobs available to Plaintiff. Therefore, testimony from a vocational expert was not required.

    Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2012.